**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Le Tote, Inc., | |
| *Plaintiff*, | Civil Action No. 2:20-cv-03009-PBT |
| v. | Hon. Petrese B. Tucker |
| Urban Outfitters, Inc., | Oral Argument Requested |
| *Defendant*. | |

### URBAN OUTFITTERS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL INTERROGATORY RESPONSES

More than two years have elapsed since Le Tote, Inc. ("Le Tote") first voiced its speculative and unfounded claims against Urban Outfitters Inc. ("Urban"). It has been more than a year and half since Le Tote repeated those allegations in its Complaint, asserting—in conclusory fashion—that Urban misappropriated unspecified Le Tote trade secrets to develop and launch Nuuly, a clothing rental subscription company. But even now—several months into fact discovery—Le Tote refuses to provide the factual bases, if any, for its allegations of wrongdoing. Instead, in response to direct interrogatories seeking the identity of Le Tote's purported trade secrets and factual bases for its misappropriation claims, Le Tote asserts that (1) the Complaint describes the supposed misconduct (and therefore no verified answer is required) and (2) Le Tote must first have the opportunity to examine Urban's files before it identifies the Le Tote "trade secrets" at issue.

As discussed below, neither "objection" is valid. Even if the Complaint described each instance of alleged misappropriation by Urban with the requested specificity—it does not—that circumstance would not excuse Le Tote from providing an interrogatory response verified by a Le Tote representative, who would be subject to examination. Similarly, Le Tote cannot properly

object to answering interrogatories asking for the factual bases for Le Tote's allegations on the grounds that Le Tote has not yet seen Urban's records. The Complaint certainly does not caveat its assertions of Urban's alleged wrongdoing by stating that Le Tote will not know whether its allegations are true until it sees Urban's files. Again, Le Tote must state what it knows (or in this case, what it does not know) in a verified answer to Urban's interrogatories.

Le Tote's refusal to specify the factual basis for its claims prejudices Urban's ability to defend itself, particularly given the short fact discovery period that Le Tote urged this Court to adopt. To make matters worse, while refusing to answer these core interrogatories, Le Tote seeks far-reaching and unjustified discovery of Urban. This is no coincidence. Unable or unwilling to disclose the most basic facts it needs to prove its case, Le Tote's strategy appears to be to scour Urban's records with the hope that it will find facts to justify its speculative claims. These tactics cannot be allowed. Le Tote must provide this core discovery on its claims or abandon them. Le Tote's objections should be overruled, and the Court should grant Urban's Motion to Compel answers to its interrogatories.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from exploratory discussions in early 2018 regarding a potential business transaction between Le Tote and Urban. ECF 1 ("Compl.") ¶ 29. At that time, Le Tote was in the wardrobe rental business but lacked a brick-and-mortar retail platform or presence, whereas Urban was a well-established leader in the retail fashion business, interested in expanding its retail offerings through wardrobe rental subscriptions. Compl. ¶¶ 2–3, 8–9. To facilitate the exchange of certain business information pertinent to the parties' negotiations, the parties executed a mutual non-disclosure agreement ("NDA"). ECF 1-1 at 1. However, by early May 2018, the parties went their separate ways without reaching any agreement. Compl. ¶ 53.

On May 21, 2019, more than a year after discussions with Le Tote ended, and after leveraging its years of retail experience—including its existing financial systems, infrastructure, marketing, human resources, and customer bases—and committing the necessary resources to do so, Urban announced the launch of Nuuly. Compl. ¶ 58. Eight months later, on January 17, 2020, Le Tote first accused Urban of misappropriating Le Tote "confidential information" in developing Nuuly. *See* Declaration of Douglas W. Baruch ("Baruch Decl."), ¶ 5. On January 24, 2020, Urban responded to Le Tote's allegations, denying them in all respects, but demanding that Le Tote identify any evidence of specific Le Tote confidential information it alleged Urban used or was misusing so that Urban could assess and respond to Le Tote's specific allegations. *Id.* ¶ 6. Le Tote never responded, let alone identified any such misappropriation or use by Urban. *Id.* ¶ 6.

Instead, five months later, on June 22, 2020, Le Tote filed the Complaint, purporting to assert claims for alleged misappropriation of trade secrets in violation of the DTSA and PUTSA (Counts I and II), breach of contract (Count III), unfair competition (Count IV), and unjust enrichment (Count V).[1] Urban filed a motion to dismiss arguing, in part, that Le Tote had failed to identify any purported trade secret allegedly misappropriated by Urban. The Court denied that motion, on the grounds that "[a]t the *Rule 12 stage* . . . a complaint does not need to disclose trade secrets to state a claim." ECF 20 at 7 (citations and quotations omitted) (emphasis added).

Thereafter, Urban served written discovery aimed at discovering any factual basis for Le Tote's claims. That written discovery included interrogatories targeting (1) the specific Le Tote trade secret/proprietary information Le Tote is placing at issue in this litigation, (2) the factual basis for Le Tote's allegations in this case that Urban misappropriated that information, and (3) Le Tote's efforts to protect the confidentiality of its alleged trade secrets. The particulars of the

---

[1] The Court dismissed Le Tote's unjust enrichment claim on June 24, 2021. ECF 21.

interrogatories are described below:

**Identification of Trade Secrets.**    Urban's first and second interrogatories seek identification of each alleged "trade secret" or item of "proprietary" or "confidential information" Le Tote claims Urban has misappropriated or misused.  *See* Baruch Decl. ¶ 7, Ex. A, Interrogatory Nos. 1 and 2.  Le Tote, however, refused to identify any purported trade secrets that it alleges Urban misappropriated or used.  Baruch Decl. ¶ 8, Ex. B, Response to Interrogatory Nos. 1 and 2. Instead, Le Tote objected to each interrogatory "to the extent it seeks information in the exclusive possession of Urban or to which Urban has equal access." *Id.*  Le Tote objected further that it "has requested discovery from Urban to identify which of its trade secrets [and proprietary or confidential information] Urban misappropriated while developing and launching its competing business." *Id.*  Standing on those objections alone, Le Tote provided no substantive response. *Id.*

**Factual Basis Supporting Le Tote's Misappropriation Claims.**  Urban's third and fourth interrogatories seek the factual basis supporting Le Tote's claims of misappropriation or misuse by Urban of Le Tote trade secrets and/or confidential or proprietary information.  Ex. A, Interrogatory Nos. 3 and 4.  Interrogatory No. 3 asks Le Tote to "describe all instances of unauthorized use . . . by Urban" of any item identified in response to Interrogatory Nos. 1 and 2, while Interrogatory No. 4 seeks the factual basis for Le Tote's contention that Urban "has wrongly used, and is continuing to wrongfully use Le Tote 'Confidential Information.'" *Id.*  Rather than provide a substantive, factual response, Le Tote again objected, claiming that each interrogatory "seeks information in the exclusive possession of Urban or to which Urban has equal access." Ex. B, Response to Interrogatory Nos. 3 and 4.  Standing on its objections, Le Tote refused to answer

Interrogatory No. 3.  *Id.*  Via an unverified response[2] to Interrogatory No. 4, Le Tote asserted only that Urban "launch[ed] a competing business after gaining access to Le Tote's trade secrets, proprietary information and confidential information," and that the launch of Nuuly was "led by the same employees who had access to Le Tote's information."  *Id.*

**Efforts to Protect Confidentiality.**  Urban's fifth interrogatory directs Le Tote to describe its efforts to protect the confidentiality of its purported trade secrets and/or confidential or proprietary information at issue in this litigation.  Ex. A, Interrogatory No. 5.[3]  Le Tote has not provided a verified response, and the unverified response is incomplete in any event.  Rather, after reiterating the same objections, Le Tote merely states that "Le Tote required Urban to execute the NDA as a condition of providing Urban access to its trade secrets, proprietary information and confidential information."  Ex. B, Response to Interrogatory No. 5.  At a minimum, Le Tote must describe any efforts it took to protect the supposed trade secret and proprietary information that it now claims Urban misappropriated, whether those protections were undertaken before, during, or after Le Tote's limited interactions with Urban in early 2018.[4]

On February 23, 2022, Urban sent Le Tote a letter identifying these and other deficiencies and requesting a meet and confer.  Baruch Decl. ¶ 9, Ex. C.  On March 9, 2022, the parties' counsel met and conferred but reached an impasse as to the issues raised in this motion.  Baruch Decl. ¶ 10.

---

[2] Federal Rule of Civil Procedure 33 requires that answers be verified by the person providing the answer; to the extent Le Tote contends it has made factual averments in response to Urban's interrogatories, it was required to verify those responses.

[3] Urban's Interrogatory Nos. 13 and 14 also address Le Tote's efforts to safeguard its purported trade secret and/or confidential or proprietary information.  Le Tote has agreed to supplement its responses to those interrogatories.

[4] During the parties' March 9, 2022 meet and confer, Le Tote agreed to supplement and verify its responses to Interrogatory Nos. 6 through 14 on or before March 23, 2022.

II.    ARGUMENT

Le Tote refuses to respond to proper discovery seeking identification of the allegedly misappropriated Le Tote trade secrets and the supposed acts of misappropriation that form the foundation for its claims.  Le Tote's objections are unfounded, and its unverified responses are largely non-responsive and entirely inadequate.  The Court should grant this Motion to Compel and direct Le Tote to provide the requested discovery forthwith.

A. Le Tote Must Identify Its Purported Trade Secrets and/or Confidential or Proprietary Information at Issue in this Litigation.

"It is axiomatic that a party may not assert a cause of action for misappropriation of trade secrets without identifying for the opposing party the trade secrets at issue." *Synygy Inc. v. ZS Assocs., Inc.*, No. 07-3536, 2013 WL 3716518, *1–2 (E.D. Pa. July 15, 2013) (granting motion to compel plaintiff "to provide a specific identification of the trade secrets that [plaintiff] contends defendants misappropriated.") (quotation and citation omitted).  As part of its case in chief, Le Tote "must identify its trade secrets 'with a reasonable degree of precision and specificity' that is 'particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.'" *Id.* at *2 (quoting *Dow Chem. Canada, Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012)); *see also Merck Sharp & Dohme Corp. v. Pfizer Inc.*, No. CV 19-2011, 2021 WL 2646943, at *3 (E.D. Pa. June 28, 2021) (granting motion to compel and ordering plaintiff to "provide a detailed identification of trade secrets" at issue in the litigation).

Urban's Interrogatory Nos. 1 and 2 ask Le Tote to describe in detail each "trade secret" or item of "confidential" or "proprietary information" that it claims Urban has misappropriated or misused.  Ex. A, Interrogatory Nos. 1 and 2.  Urban is entitled to this information.  *See Merck Sharp*, 2021 WL 2646943, at *3.  And Le Tote has no valid basis for withholding it.  Yet Le Tote

6

refuses to answer.

Le Tote cannot rely upon its assertion that it "has requested discovery from Urban to identify which of its trade secrets Urban [allegedly] misappropriated." Ex. B, Response to Interrogatory Nos. 1 and 2. Le Tote must identify its trade secrets now so that the parties and Court can determine the relevant scope of discovery. *See Synygy*, 2013 WL 3716518, at *2 ("It is not enough to claim that defendants will be able to learn the details through discovery. Plaintiff must provide them now so we can evaluate the relevance of plaintiff's discovery and address any objections." (quotation and citation omitted)). This is all the more apparent as Le Tote tries to justify broad discovery into all aspects of Nuuly by relying on the broad categories of information identified in the Complaint as purported "trade secrets." Such tactics are not permitted.[5] The law requires Le Tote to identify its trade secrets with particularity. *Synygy,* 2013 WL 3716518, at *5.

Nor can Le Tote shift its evidentiary burden to Urban by objecting on the grounds that the information Urban seeks is "in the exclusive possession of Urban." Ex. B, Response to Interrogatory Nos. 1 and 2. Of course, Urban cannot know what trade secrets or confidential or proprietary information form the basis of Le Tote's claims until Le Tote identifies them. *See Merck Sharp*, 2021 WL 2646943, at *3 ("plaintiffs bear a special burden as the only party with unrestricted knowledge of the exact trade secrets at issue."). Urban is not required to guess. *Synygy*, 2013 WL 3716518, at *5.

The identification of the alleged trade secrets and/or confidential or proprietary information at issue in this action is both necessary to ascertain the scope of Le Tote's claims and critical to

---

[5] Nor are the allegations in the Complaint sufficient to establish liability. *See Givaudan Fragrances Corp. v. Krivda*, 639 F. App'x 840, 845 (3d Cir. 2016) (affirming summary judgment in favor of defendant where plaintiff "failed to provide enough specific information about [the trade secrets] it believed had been misappropriated").

enabling Urban to formulate its defenses.  Without it, Urban cannot fully prepare its defenses for trial and would be severely prejudiced.  Le Tote should be compelled to respond to Interrogatory Nos. 1 and 2 to identify specifically the allegedly misappropriated trade secrets or items of proprietary or confidential information on which Le Tote's claims are based.

### B. Le Tote Must Identify Any Factual Bases for Its Claims of Misappropriation and/or Misuse of Le Tote Information.

Interrogatory Nos. 3 and 4 seek discovery of the factual basis supporting Le Tote's claims of misappropriation or misuse of Le Tote's trade secrets and/or confidential or proprietary information by Urban.  In particular, the interrogatories direct Le Tote to describe all alleged instances of unauthorized use of Le Tote trade secret or proprietary or confidential information by Urban, including the factual basis for its contention that Urban "has wrongly used, and is continuing to wrongfully use," that information.  Ex. A, Interrogatory Nos. 3 and 4.  Without admitting that it cannot answer these interrogatories or that it would be burdensome to do so, Le Tote objects claiming that the interrogatory seeks information in Urban's possession and on the basis that it has "requested discovery from Urban to identify which of its trade secrets, proprietary information, or confidential information Urban misappropriated."  Ex. B, Response to Interrogatory Nos. 3 and 4.

These objections are not valid.  Le Tote is obligated to answer these interrogatories. *See* Fed. R. Civ. P. 33(b)(3) (requiring each interrogatory "to the extent it is not objected to, be answered separately and fully in writing under oath").  Le Tote does not and cannot claim that the facts sought are irrelevant, given that each of Le Tote's claims center on the allegation that Urban "misappropriated" or "misused" Le Tote proprietary information.  *See, e.g.*, Compl. ¶¶ 73 (DTSA), 80 (PUTSA), 86 (Breach of Contract), 91 (Unfair Competition).  Le Tote's failure to identify any specific instance of alleged misuse by Urban is improper.  Either Le Tote has this information—

whereupon it must answer the interrogatories—or it does not.  If the latter, it must say so in a verified response, even if it raises serious questions as to the basis for Le Tote's Complaint.  Either way, the Motion to Compel should be granted as to Interrogatory Nos. 3 and 4.

### C. Le Tote Must Disclose Any Facts It Intends to Rely upon to Establish that Its Purported Trade Secrets Are Entitled to Trade Secret Protection.

Le Tote also refuses to disclose evidence regarding its efforts to protect from disclosure its unspecified trade secrets.  Courts in this jurisdiction have granted motions to compel in similar scenarios, reasoning that the plaintiff's "burden to describe the trade secrets with reasonable particularity includes the duty to explain why each secret is not a matter of public knowledge." *See Merck Sharp*, 2021 WL 2646943, at *3 (granting motion to compel interrogatory responses).

Urban's Interrogatory No. 5 asks Le Tote to describe its efforts to protect the confidentiality of the purported trade secrets and/or items of confidential or proprietary information it alleges were misappropriated or misused and the factual circumstances of Le Tote's disclosure of such information. Ex. A, Interrogatory No. 5.  Le Tote's objections claim that the interrogatory seeks information in Urban's possession and that it has "requested discovery from Urban to identify which of its trade secrets, proprietary information, or confidential information Urban misappropriated." Ex. B, Response to Interrogatory No. 5.  Le Tote then goes on to state—without verification—that "Le Tote required Urban to execute the NDA as a condition of providing Urban access to its trade secrets, proprietary information and confidential information." *Id.*

Neither the objections nor the response are valid.  Once again, Le Tote does not assert that it cannot provide the requested discovery, and it does not claim that the discovery is irrelevant.  Le Tote seeks to turn discovery on its head by disclaiming any obligation to substantiate its claims, instead claiming that Urban should be able to answer its own question.  But that is wrong.  This interrogatory goes to the heart of Le Tote's claims, as it concerns whether Le Tote's alleged trade

9

secrets actually are trade secrets. *See* 18 U.S.C. § 1839(3). For Le Tote information to qualify as a protectable trade secret under the DTSA and PUTSA, among other requirements, the information must not be "readily ascertainable by proper means" and Le Tote must have "taken reasonable means to keep [it] secret." *See Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018) (citing 18 U.S.C. § 1839(3); 12 Pa. Const. Stat. Ann. § 5302). Le Tote cannot maintain its causes of action while withholding the answer to this interrogatory. If Le Tote took any steps to protect the trade secrets or proprietary information at issue in this case—independent of the NDA with Urban—it must describe them in a verified interrogatory response. And if Le Tote took no such efforts—beyond the NDA—it needs to say so in a verified response. *See* Fed. R. Civ. P. 33(b)(3), (5).

## III.    CONCLUSION

For these reasons, Urban respectfully requests that the Court grant its Motion to Compel Interrogatory Responses and issue an order compelling Le Tote to provide the requested discovery.

MORGAN, LEWIS & BOCKIUS LLP

Dated: March 14, 2022

*/s/ Dana E. Becker*

Dana E. Becker (Pa. ID No. 209513)
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-4628
Facsimile: (215) 963-5001
dana.becker@morganlewis.com

Douglas W. Baruch (*pro hac vice*)
Neaha P. Raol (*pro hac vice*)
Lindsey T. Levy (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Phone: (202) 739-3000
douglas.baruch@morganlewis.com
neaha.raol@morganlewis.com
lindsey.levy@morganlewis.com

*Counsel for Defendant Urban Outfitters, Inc.*

10

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2022, I caused the foregoing to be filed with the Clerk of Court of the United States District Court for the Eastern District of Pennsylvania using the Court's CM/ECF system.  The motion, memorandum of law, supporting Declaration of Douglas W. Baruch, and associated exhibits are available for viewing and download from the Court's CM/ECF system, and a true and correct copy was served via CM/ECF to all counsel of record registered with the Court's CM/ECF system.

*/s/ Dana E. Becker*
Dana E. Becker