UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LE TOTE, INC., | : | |
| Plaintiff, | : | No. 2:20-cv-03009 (NIQA) |
| v. | : | |
| URBAN OUTFITTERS, INC., | : | |
| Defendant. | : | |

### **PLAINTIFF, LE TOTE, INC.'S PROPOSED VOIR DIRE QUESTIONS**

Plaintiff, Le Tote, Inc. ("Plaintiff" or "Le Tote"), in the above-referenced action (the "Action"), respectfully requests that the Court permit the undersigned counsel to supplement the Court's preliminary phase of *voir dire* with the questions posed herein.

**A.  Case Familiarity**

The plaintiff in this action, Le Tote, Inc., is an online women's fashion subscription rental business.  The defendant in this action, Urban Outfitters, Inc.,

is a multinational lifestyle products and services company that operates a portfolio of global consumer brands, including an online women's fashion rental subscription business called Nuuly.

Here, Le Tote alleges that, in March 2018, Le Tote and Urban Outfitters entered into negotiations for Urban Outfitters to purchase or enter another business arrangement with Le Tote, which included entering into a non-disclosure agreement. Le Tote alleges that non-disclosure agreement prohibited Urban from using Le Tote's confidential information for any purpose other than evaluation of Le Tote's business and prospects, and negotiating and consummating a transaction between Le Tote and Urban. Le Tote further alleges that Le Tote showed Urban Outfitters the most important aspects of Le Tote's business so that Urban

Outfitters could perform due diligence related to the potential acquisition of Le Tote. Le Tote alleges that Urban took the same three executives who led due diligence into Le Tote, and put them in charge of designing and launching Nuuly, a competing business. Finally, Le Tote alleges that Urban Outfitters wrongly took the information it learned during its due diligence of Le Tote to start Nuuly.

Do you know anything about this dispute or have you seen or heard anything about it from any person or source, including the internet and news media?

### B.      Acceptance of the Court's Instructions

At the end of the presentation of evidence, the Court will give you instructions that include the definitions and elements of the parties' claims in this Action. The Court's definitions of these claims may or may not fit your own notion of what it means to breach a contract or misappropriate a trade secret. Would you have a problem setting aside your own definitions or ideas about these claims? If you disagree with the way the law defines these types of claims, can you agree to set aside your personal opinions and use the definitions that the Court gives you to reach a verdict?

### C.      Parties and Witnesses

#### 1.      Plaintiff

Have you or a close friend or relative ever had an employment, ownership, or other business relationship with Le Tote?

#### 2.      Plaintiff Counsel

Are you or a close friend or relative familiar with the plaintiff's attorneys, Mr. Thomas Biemer, Ms. Christie Callahan Comerford, Mr. Jay Kagan, Mr. Patrick Hamlet, or Mr. Jack Small, including their law firm Dilworth Paxson, LLP, through any family, social, business, or other contact?

### 3. Defendant

Have you or a close friend or relative ever had an employment, ownership, or other business relationship with Urban Outfitters, or any of its past or present affiliated and/or related companies, Anthropologie, BHLDN, Free People, Terrain, Urban Outfitters, and Nuuly, represented here and founded by Mr. Richard Hayne?

### 4. Defense Counsel

Are you, or a close friend or relative, familiar with the defendant's current or former attorneys, Mr. Michael Banks, Mr. Douglas Baruch, Ms. Dana Becker, or Ms. Lindsay Levy, including their law firm, Morgan, Lewis & Bockius LLP, through any family, social, business, or other contact?

### 5. Witnesses and Others

Are you or a close friend or relative familiar with any of the following people, through any family, social, business or other contact? Each of them may be called as a witness or mentioned in this trial.

**Lay Witnesses**

- Charles Bowman
- Frank Conforti
- Chirag Dadia
- Kim Gallagher
- Ruth Hartman
- David Hayne
- Richard Hayne
- Calvin Hollinger
- Melanie Marein-Efron

- Phil Nanney

- Brett Northart

- Alan Rosenwinkel

- Mike Sparks

- Joseph Stratter

- James Tagliani

- Chloe Thompson

- Rakesh Tondon

**Expert Witnesses**

- Charles Bowman – Le Tote's Technical/Liability Expert

- Ian Ratner – Le Tote's Damages Expert

    Firm: B. Riley Financial
    Peachtree Road
    Suite 1225
    Atlanta, GA 30326

- Stephen Hopper – Urban Outfitter's Technical/Liability Expert

    Firm: Inviscid Consulting
    6175 Hickory Flat Highway
    Canton, GA 30115

- Carlyn Irwin – Urban Outfitter's Damages Expert

    Firm: Cornerstone Research
    Lexington Avenue
    New York, NY 10022

**6.     Corporate Liability**

As you now know, the defendant in this Action is a corporation.  Under the law, a corporation is responsible for the conduct of its employees if the employees are acting within the scope of their authority.  Do you have any problem holding a corporation responsible for the

conduct of its employees when they are acting within the scope of their employment? Would you answer change if the corporation was in dire financial straits?

### 7. Juror Qualifications

This next question has seven parts. When I finish reading all seven parts, please stand if you:

      (a)    are not yet 18 years old,

      (b)    are not a citizen of the United States,

      (c)    have ever received a sentence of more than six months for any crime (even if all or part of it was suspended),

      (d)    have a charge pending against you for a crime punishable by imprisonment for six months or more,

      (e)    have a disability preventing you from serving on a jury (for which you have brought written documentation from a health care provider).

If your answer to any part of this question is YES, or if you are not sure how to answer this question, please stand.

### 8. Legal Knowledge

Have you or a close friend or relative ever been trained or employed in the law, law enforcement, or a law-related field? In other words, have you or a close friend or relative ever:

      (a)    been trained or employed as a law clerk, paralegal, judge, legal secretary, lawyer, or court employee;

      (b)    been trained or employed as a law enforcement, corrections, security, parole or probation officer or investigator;

      (c)    been trained or employed in the insurance business, or as an accident, health, or claims investigator of adjuster; or

      (d)    studied law, criminology, forensic science, or any similar field of study, or worked in a related occupation not already identified?

### 9. Circumstantial versus Direct Evidence

There are two types of evidence that you will be asked to consider in this Action; one is direct evidence and the other is circumstantial evidence. Direct evidence comes from witnesses who describe what they saw or heard. Circumstantial evidence is testimony or a document that gives you a reasonable basis for drawing a conclusion about what happened. Le Tote's claim against Urban Outfitters for misappropriating its trade secrets can be proven by either direct or by circumstantial evidence. Do you have any issue with that? Would you have a problem giving equal consideration to circumstantial evidence? Would you refuse to find in favor of Le Tote on its trade secret misappropriation claim if the evidence offered was based, in part, on circumstantial evidence?

### 10. Other Prospective Jurors

Do you know or recognize any other member of this jury panel?

### 11. Expert Witness

One or more of the witnesses in this case may be qualified to offer expert opinions in the areas of damages and technical/liability/trade secret topics. With respect to such damages opinions, these witnesses may opine on financial information such as a historical, present, and/or future economic financial analyses, for example. Moreover, with respect to technical/liability/trade secret topics, these witnesses may opine on, among other things, the technical creation and functionality of "workflows" utilized by the plaintiff and defendant to most effectively provide clothing to rental subscription customers. Stated differently, the opinions of the parties' technical/liability experts may reference source code and other software design and programming characteristics. Would you tend to accept or reject any part of the testimony of these expert witnesses because of their areas of expertise?

### D.   Nature of Case

#### 1.   Intellectual Property Ownership Dispute

Have you or a close friend or relative ever been involved in an ownership dispute over a trademark, or a dispute regarding alleged or proven trademark infringement?

Have you or a close friend or relative ever been involved in an ownership dispute over copyrighted material, or a dispute regarding alleged or proven copyright infringement?

Have you or a close friend or relative ever been involved in an ownership dispute of trade secreted material, or a dispute regarding alleged or proven misappropriation of trade secrets?

#### 2.   Subscription Rental Business

Have you or a close friend or relative ever worked for a company that provides fashion subscription rental services, such as Le Tote, Nuuly, Rent the Runway, or Gwynnie Bee?

Have you or a close friend or relative ever used the services of a company that provides fashion subscription rental services, such as Le Tote, Nuuly, Rent the Runway, or Gwynnie Bee?

Do you have any strong feelings, positive or negative, about the fashion subscription rental business?

### E.   Specific Considerations

#### 1.   Investments

Have you or a close friend or relative ever invested in Urban Outfitters, traded as URBN on Nasdaq?

#### 2.   Special Knowledge or Expertise

Have you or a close friend or relative ever been trained or employed in or for (i) the fashion subscription rental industry; (ii) warehouse logistics; (iii) software development, including writing code; and/or (iv) otherwise being responsible for developing information technology?

**F.**     **Individual Follow-up Questions to Affirmative Responses**

Please explain why you indicated that . . . [question answered]?

Can you put aside that incident or experience as you listen to and observe the evidence that will be presented in this case?

Are you certain that you can decide this case fairly and impartially, based solely on the evidence presented and the law as I will instruct you on it?

**G.**     **No Response**

You have not responded affirmatively to any of the questions asked.

Have you heard and understood all of the questions I have asked?

          DILWORTH PAXSON LLP

Dated: February 2, 2024  By: /s/ Christie Callahan Comerford
           Thomas S. Biemer, Esq. (Pa. ID 62644)
          Jay Kagan, Esq. (Pa ID 76204)
          Christie Callahan Comerford, Esq. (Pa. ID 79343)
          1500 Market Street, Suite 3500E
          Philadelphia, PA 19102
          *Counsel for Plaintiff, Le Tote, Inc.*

**CERTIFICATE OF SERVICE**

      Christie Callahan Comerford, Esquire, do hereby certify that I caused the foregoing, Plaintiff, Le Tote, Inc.'s proposed *Voir Dire* Questions to be made available to counsel of record by filing electronically with this Court's CM/ECF system.

Date: February 2, 2024
                                            */s/ Christie Callahan Comerford*
                                            Christie Callahan Comerford, Esquire
                                            **Dilworth Paxson LLP**
                                            *Attorneys for Plaintiff*